IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KANSAS CITY TAXI CAB DRIVERS ASSOCIATION, LLC; GAMMACHU MIXICHA; and TADDESSE ERBETTO<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF KANSAS CITY, MISSOURI<br><br>    SERVE: Mayor Sly James<br>            The Office of the Mayor<br>            29th Floor, City Hall<br>            414 E. 12th Street<br>            Kansas City, MO 64106-2795<br><br>    Defendant. | Cause No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COME NOW Plaintiffs Kansas City Taxi Cab Drivers Association, L.L.C. (the "Association"), Gammachu Mixicha ("Mixicha") and Taddesse Erbetto ("Erbetto") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint for Declaratory Judgment and Injunctive Relief against Defendant City of Kansas City, Missouri ("City"), states as follows:

**INTRODUCTION**

1. The Association was formed in March 2011 by a group of taxicab drivers, including Mixicha and Erbetto, who work and live in and near the metropolitan Kansas City area. By and large, these drivers immigrated to the United States and became United States citizens with a desire to earn a living and be productive members of the community.

1

2. The Association's drivers, including Mixicha and Erbetto, currently work for nine (9) existing taxicab companies that exclusively possess all five hundred forty-seven (547) outstanding taxicab permits issued by the City under Kansas City, Mo. Ordinances.

3. Under a 2008 Amendment to Kansas City, Mo. Ordinances, the number of outstanding taxicab permits are to be reduced to five hundred (500), and no new taxicab permits will be issued to new applicants unless and until the number of permits is reduced from five hundred forty-seven (547) to four hundred ninety (490). The outstanding permits issued to the nine (9) taxicab companies must be renewed annually; however, the restriction reducing the number of outstanding permits to five hundred (500) is not imposed on the nine (9) current permit holders' renewal applications. This effectively closes the system to any new permit applicant, such as Plaintiffs, but affords the nine (9) taxicab companies the ability to indefinitely renew their existing permits with no limitations.

4. With a monopoly on all outstanding permits, the current nine (9) taxicab companies have a fiefdom-like control on the Kansas City taxicab market. The taxicab companies charge weekly fees for the use of the permit, and drivers are required to maintain their own vehicles and pay their own overhead costs and driver certificate expenses, all while receiving no benefits of employment, including health insurance. The taxicab company weekly fee is simply a leasing (albeit at a substantial higher rate than the cost of the permit) of the permit from the taxicab company to the driver.

5. The current system promotes a regime whereby current taxicab companies are able to exploit their taxicab drivers. The City regulations and permitting limitations effectively require the drivers to work through the current existing taxicab companies if they want to drive a taxi. Additionally, the system has created a lack of competition among taxicab companies,

resulting in an increase in the cost to passengers, decrease in the efficiency of the taxicab network, and an overall decline of the professionalism of the taxicab service in the Kansas City area.

6. Permitting driver-owned companies to obtain permits, reallocating some of the presently outstanding permits to driver-owned companies or merely placing new permit applicants on equal footing as the nine (9) preexisting taxicab permit holders would unquestionably be beneficial to the City, Plaintiffs, other taxicab drivers and the general public. Driver-owned companies will promote quality and encourage drivers to raise the level of professionalism in the taxicab industry. Additionally, by participating in a driver-owned company, drivers would be able to build the resources to invest in a newer fleet of environmentally-friendly vehicles. Increasing competition in the industry would serve to benefit the public interest, as increased competition would lead to increased quality of service and reduced cab fares.

7. Plaintiffs and their representatives endeavored to explain the plight of the taxicab drivers to City officials in an effort to have them consider, for example, alternative permitting requirements, a bifurcated system between airport and "on call" taxicab drivers and a new system of regulating taxicabs. City officials fail to understand the human effects, the unconstitutionality of the current system and the resulting burden on the travelling public and were unwilling to entertain ideas about alternatives for the current construct.

## NATURE OF ACTION

8. This is a claim for declaratory judgment pursuant to Fed R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, and injunctive relief pursuant to Fed. R. Civ. P. 65, arising from the

actions and/or omissions of the City, in violation of Plaintiffs' federal constitutional rights related to the restrictions on issuance of taxicab permits by Defendant City.

## PARTIES

9. Plaintiff Association is a Missouri limited liability company organized under the laws of the State of Missouri, whose members consist exclusively of taxicab drivers living and working in or near the metropolitan Kansas City area.

10. Plaintiff Mixicha is a resident and citizen of Jackson County, Missouri and a citizen of the United States.

11. Plaintiff Erbetto is a resident and citizen of Platte County, Missouri and a citizen of the United States.

12. Plaintiffs Mixicha and Erbetto are members and officers of the Association and work for taxicab companies which currently possess taxicab permits issued by the City, pursuant to Kansas City, Mo. Ordinances § 76-70 through § 76-79.

13. Defendant City is a duly authorized charter city and municipality constituted and existing under the laws of the State of Missouri.

## JURISDICTION AND VENUE

14. Jurisdiction is proper, pursuant to 28 USC § 1331, as this action arises under the laws and Constitution of the United States.

15. Venue is appropriate in this district, pursuant to 28 USC § 1391(b)(1) and (2).

## FACTS COMMON TO ALL COUNTS

16. The taxicab industry in the City is regulated both by Defendant City and the Kansas City International Airport ("KCI").

17.     To operate a taxicab anywhere in the City, including at KCI, taxi drivers must have a valid permit, which is issued for the taxicab vehicle by the City. Kansas City, Mo. Ordinance §76-70 provides that "[n]o person shall operate any taxicab without a valid city taxicab permit issued for the vehicle and displayed in a manner prescribed by the director…"

18.     In addition to possessing a permit for the operation of the taxicab vehicle, the taxicab driver must also have a valid driver's certificate, which must be renewed annually, pursuant to Kansas City, Mo. Ordinances, §§ 76.101-116.

19.     Kansas City, Mo. Ordinance § 76-72 provides that "[p]ermits shall be issued for a period of one calendar year and are subject to the annual renewal provision contained <u>in section 76-74</u>. Such permits shall remain the title and property of the [C]ity. Permits may only be transferred from person to person if an application is filed and approved by the director and all other provisions of this code are satisfied." (emphasis in original).

20.     Kansas City, Mo. Ordinance § 76-74 provides "[p]ermits for the operation of taxicabs shall be annual permits which expire on September 30 of each year. Permits in good standing on the date of their expiration shall be eligible for renewal. All vehicles for which new or renewed permits are sought must be inspected within the preceding 90 days and found to be in compliance with the requirements of this code before the issuance or renewal of such permits."

21.     Kansas City, Mo. Ordinance § 76-75 provides for minimal annual permit fees to be paid to the City by the permit holder.

22.     Upon information and belief, there are approximately five hundred forty-seven (547) outstanding taxicab permits presently issued by the City, which are all allocated between only nine (9) taxicab companies as follows:

5

| Cab Company | Number of Permits |
|---|---|
| Yellow* | 300 |
| City Cab* | 125 |
| United | 12 |
| Allstar* | 22 |
| Atlas* | 31 |
| Northland | 15 |
| Orange | 15 |
| Arya | 12 |
| Crown | 15 |

*Designated taxicab companies have subsumed under their auspices and permit structure a small number of other companies that, upon information and belief, had less than ten (10) permits from a time predating the adoption of the amendment to Kansas City, Mo. Ordinance § 76-73 discussed below.

Upon information and belief, no permit is possessed by an individual taxicab driver or driver-owned taxicab company and all permits are possessed by the nine (9) taxicab companies.

23. In 2008, the City amended its Ordinances to provide for the reduction of the number of outstanding permits. Kansas City, Mo. Ordinance § 76-73(a) provides "[t]he total number of permits for the operation of taxicabs shall be reduced from a limit of 600 to 500 . . . In order to reduce the number of permits, any permit surrendered or forfeited shall not be reissued by the director until the total number of permits does not exceed 500 permits. Each permit holder must have at least 70 percent of the permitted vehicles in operational condition as required by this code at all times."

6

24. Pursuant to Kansas City, Mo. Ordinance § 76-73(a), while the City is obligated to reduce the number of taxicab permits to 500, the City is not permitted to revoke presently-issued permits. Instead, the only legally permitted method for reducing the number of outstanding permits under §76-73(a) is by not reissuing permits once they have been surrendered, forfeited or voluntarily chosen not to be renewed by one of the nine (9) taxicab companies.

25. While permits must be renewed on an annual basis, the restriction on the number of permits provided for in § 76-73(a) does not affect the nine (9) taxicab companies' ability to renew any or all of their permits on September 30 of each year, even if such renewal will result in greater than 500 permits issued by the City. Kansas City, Mo. Ordinance § 76-73(c) provides "[i]f the total number of permits issued at the time this chapter becomes effective exceeds the number authorized, those permits, if they meet all other requirements, <u>shall be entitled to renewal on an annual basis</u>. If a permit is not renewed or ceases to fulfill all other requirements of this chapter and is thereafter terminated or canceled or expires, then an application for a new permit shall be required and the provisions herein limiting the number of permits shall apply." (emphasis added).

26. In order to apply for a permit as a new applicant, an individual or entity must apply for a minimum of ten (10) permits for (10) taxicab vehicles. Kansas City, Mo. Ordinance § 76-73(b) provides "[a]ll new applicants to operate taxicabs must permit at least ten vehicles."

27. In addition to the aforementioned regulations by the City, the Director of Aviation ("Director") is authorized to regulate taxicabs at KCI, pursuant to Kansas City, Mo. Ordinances §§ 6-32 and 6-46 and to establish and prescribe fees for those granted the privilege to use the airports for commercial purposes under Kansas City, Mo. Ordinance § 6-32.

28. The Director has delegated the management of taxicabs to the Airport Police Division, a segment of the Kansas City Aviation Department.

29. To operate a taxicab at KCI, a driver must hold a city-issued permit and a separate Airport permit.

30. A driver seeking to operate his taxicab at KCI must apply for an additional vehicle inspection by the Airport Police Division over and above the inspection required by the City. The Airport Police Division requires the driver to submit his or her inspection paperwork from the City inspection prior to the Airport-specific inspection. Once the vehicle is inspected and the Airport Police Division determines that the driver has complied with the general City permitting and certificate requirements, the Division will issue the driver a sticker for his vehicle and a Trip Card.

31. In order to operate at KCI, the driver must put money on the Trip Card, which operates like a debit card, to pay Per-Trip fees. When working at KCI, the taxicab driver will check-in at the taxi lot by swiping his Trip Card. Each swipe deducts a $3.00 Per-Trip fee from the card balance and allows the driver entry onto the lot. The driver will wait in the taxi lot until he is dispatched to pick up a KCI passenger. The Police Airport Division is responsible for the dispatching system.

32. Upon information and belief, a taxicab driver might wait upwards of seventeen (17) hours a day to get two fares at KCI, which will generate between $40.00 and $60.00 each.

33. Plaintiffs Mixicha and Erbetto and the member drivers of the Association currently work for the nine (9) existing taxicab companies which possess all outstanding permits issued by the City.

34. In order to work for any of the nine (9) existing taxicab companies and be granted use of their city-issued permits, the driver must, among other things, (a) agree to pay substantial weekly fees to the taxicab companies for use of the permit; (b) agree to cover his or her own operating expenses; and (c) in some instances, pay for the lease of the vehicle from the taxicab company.

35. Upon information and belief, the weekly fees and vehicle lease fees charged by each of the nine (9) taxicab companies are identified below:

| Cab Company | Number of Permits | Weekly Fee | Weekly Fee + Vehicle Lease |
|---|---|---|---|
| Yellow | 300 | $260 | $470 |
| City Cab | 125 | $175 | $300 |
| United | 12 | $160 | $260 |
| Allstar | 22 | $160 | $260 |
| Atlas | 31 | $220 | $350 |
| Northland | 15 | $145 | $260 |
| Orange | 15 | $220 | $260 |
| Arya | 12 | $160 | $260 |
| Crown | 15 | unknown | $300 (only vehicle lease) |

36. The weekly fees paid to the nine (9) taxicab companies by their respective drivers amount to a fee paid for the lease of the city-issued permit from the taxicab company to the driver.

37. Upon information and belief, the City is paid annually approximately $164,100.00 in taxicab permitting related fees by the nine (9) taxicab companies combined. In contrast, the nine (9) taxicab companies generate approximately $6,449,560.00 annually in fees charged to

9

their taxicab drivers for the use of the taxicab permits. An itemization of such figures is detailed below:

**To the City:**

| | |
|---|---|
| Annual Per Vehicle Permit | $20.00 |
| Annual Per Vehicle Inspection | $22.00 |
| Annual Replacement Decal | $8.00 |
| Annual Taxi Permit Renewal | $250.00 |
| *Total per vehicle Cost* | $300.00 |
| Total Outstanding Permits | 547 |
| **Annual Permit Revenue to the City** | **$164,100.00** |

**To the Taxicab Companies:**

| Company Name | Number of Permits | Weekly Fee* | Annual Income |
|---|---|---|---|
| Yellow | 300 | $260 | $4,056,000.00 |
| City Cab | 125 | $175 | $1,137,500.00 |
| United | 12 | $160 | $99,840.00 |
| Allstar | 22 | $160 | $183,040.00 |
| Atlas | 31 | $220 | $354,640.00 |
| Northland | 15 | $145 | $113,100.00 |
| Orange | 15 | $220 | $171,600.00 |
| Arya | 12 | $160 | $99,840.00 |
| Crown | 15 | $300 | $234,000.00 |

| | |
|---|---|
| **Annual Revenue to Taxicab Companies for permit use:** | **$6,449,560.00** |
| Taxicab Company expense to maintain permits: | $164,000.00 |
| Net Income on permits alone: | **$6,285,560.00** |

\* The annual income made by each taxicab company for the lease of their city-issued permits does not even include the fees paid to the nine (9) taxicab companies by the taxicab companies' drivers for the lease of the taxicab companies' vehicles.

    38.    Under current law, the nine (9) taxicab companies maintain a fiefdom-like control on the taxicab market preventing individual drivers and driver-owned companies from obtaining permits of their own or any market share and requiring individual drivers working for the taxicab

10

companies to pay substantial fees (which are inordinately greater than the fees paid by the taxicab company to the city for the permit) in order to lease the city-issued permit.

39. Under current law, a new taxicab permit applicant must possess the ability to apply for a minimum of ten (10) vehicle permits and maintain seventy (70) percent of the permitted vehicles in operational condition. If the applicant does not possess the ability to apply for ten (10) vehicle permits, the application will be rejected, regardless of its otherwise legitimacy.

40. Even if a new applicant has the ability to apply for ten (10) vehicle permits at once, the City will still reject and fail to even consider such application unless the number of outstanding permits drops to 490 or below, pursuant to Kansas City, Mo. Ordinance § 76-73(a).

41. Under current law, the City will consider applications for renewal by permit holders prior to even considering applications by new-applicants.

42. The limitation on the number of permits by Kansas City, Mo. Ordinance § 76-73 makes possession of a permit extremely valuable. Because § 76-73 entitles the nine (9) taxicab companies to indefinitely renew all of their permits (which they do every year), even if the number of outstanding permits at the time of renewal exceeds the maximum limit as proscribed by § 76-73, § 76-73 entirely prevents any new applicant, such as any of Plaintiffs, from even being considered for the issuance of a taxicab permit, much less ever obtaining any market share in the taxicab market.

43. In light of the fees paid to the nine (9) taxicab companies by their drivers, fees paid by drivers for their own overhead, and fees paid by drivers to KCI, taxicab drivers, including Plaintiffs Mixicha and Erbetto and the members of Plaintiff Association, are barely able to sustain themselves.

11

Case 4:12-cv-00158-GAF   Document 1   Filed 02/01/12   Page 11 of 19

44. Plaintiffs have the financial means to start their own driver-owned taxicab companies; however, because of Kansas City, Mo. Ordinance § 76-73 (both on its face and in its application), they are prevented from doing so.

45. Providing for individual operator permits and giving driver-owned companies and other new applicants an equal footing to obtain taxicab permits along with the preexisting nine (9) taxicab companies would promote a system of driver-owned taxicab companies in which the drivers are vested in their companies.

### COUNT 1– DECLARATORY JUDGMENT
### (Equal Protection – U.S. Const. Amd. XIV)

46. Plaintiffs hereby reallege and incorporate paragraphs 1-45, as if fully set forth herein.

47. Plaintiffs have been denied equal treatment under the law in that Kansas City, Mo. Ordinance § 76-73 both on its face and in the City's enforcement and application of the same, unreasonably, unjustifiably and illegitimately discriminates against Plaintiffs individually, small taxicab companies, driver owned taxicab companies and any individual or entity not already possessing a taxicab permit in favor of nine (9) taxicab conglomerates which presently, exclusively and indefinitely will maintain and possess all of the City's taxicab permits.

48. Such discrimination includes, among other things,

(a) Kansas City, Mo. Ordinance § 76-73's discrimination in favor of the nine (9) large taxicab companies presently in possession of all outstanding permits and against Plaintiffs in that, unlike the nine (9) taxicab companies, in order to even be considered for a taxicab permit, Plaintiffs must be able to (a) apply for ten (10) permits; (b) have at least seven (7) vehicles in operational capacity; and (c) notwithstanding the ability to perform the requirements listed in (a)-(b), Plaintiffs will still not even be considered for a taxicab permit, unlike the current

12

nine (9) taxicab companies, unless the number of outstanding permits has fallen to 490 (which has yet to, and will likely never, happen); and

        (b)      Kansas City, Mo. Ordinance § 76-73's discrimination in favor of the nine (9) taxicab companies presently in possession of all outstanding permits and against Plaintiffs in that (a) the nine (9) taxicab companies' annual renewal applications are considered and approved prior to any applications by potential new applicants such as Plaintiffs; (b) the nine (9) taxicab companies are not subject to the express requirement that the number of outstanding permits be reduced to 500; and (c) upon information and belief, the City has yet to even consider a new-applicant's permit application, subsequent to the above-mentioned amendment to Kansas City, Mo. Ordinance § 76-73.

49.    Kansas City, Mo. Ordinance § 76-73 on its face and in its application advances no legitimate governmental interest. Any governmental interest offered by the City would be mere pretext for unjustified, unreasonable, and illegitimate economic favoritism of the nine (9) large taxicab conglomerates over Plaintiffs, small taxicab companies and driver-owned companies.

50.    Any purported legitimate governmental interest offered by the City unrelated to economic favoritism would not be genuinely connected to same, as there is no rational and reasonable basis to have enacted Kansas City, Mo. Ordinance § 76-73, except for the above-mentioned discrimination and economic favoritism.

51.    Indeed, Kansas City, Mo. Ordinance § 76-73 lacks any public justification whatsoever in that it, among other things, serves to reduce competition within the taxicab industry, which in turn increases taxicab fares and reduces the quality of service offered to the general public, and favors conglomerate taxicab companies.

52. Consequently, Kansas City, Mo. Ordinance § 76-73 violates the Equal Protection Clause under the 14th Amendment to the United States Constitution and should be declared unconstitutional and void.

53. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the authority to determine the rights, status and obligations of the parties herein.

54. An actual, cognizable controversy exists between Plaintiffs and the City in that Plaintiffs have suffered an actual, threatened and impending injury arising out of and as a result of Kansas City, Mo. Ordinance § 76-73, both on its face and in the City's discriminatory application and enforcement of the same.

55. Such controversy is substantial and between parties having adverse legal interests of sufficient immediacy and/or reality which necessitates resolution herein.

56. Plaintiffs' interest herein will be indefinitely affected and damaged, absent a declaration that Kansas City, Mo. Ordinance § 76-73 is unconstitutional.

57. Granting the relief requested herein would immediately redress Plaintiffs' injury and terminate the controversy between Plaintiffs and the City.

58. Plaintiffs have no adequate remedy at law and to grant the remedy requested herein will avoid a multiplicity of lawsuits.

### COUNT 2 – DECLARATORY JUDGMENT
### (Substantive Due Process – U.S. Const. Amd. XIV)

59. Plaintiffs hereby reallege and incorporate paragraphs 1-58, as if fully set forth herein.

60. Kansas City, Mo. Ordinance § 76-73 on its face and in the City's enforcement and application of the same is arbitrary, capricious, unreasonable and truly irrational in that it, among other things, advances no legitimate, rational or reasonable governmental interest and arbitrarily

14

Case 4:12-cv-00158-GAF   Document 1   Filed 02/01/12   Page 14 of 19

and capriciously favors nine (9) taxicab conglomerates which presently, exclusively and indefinitely will maintain and possess all of the City's taxicab permits.

61. For among other reasons, Kansas City, Mo. Ordinance § 76-73 on its face and in the City's enforcement and application of the same is arbitrary, capricious, unreasonable and truly irrational:

(a) Kansas City, Mo. Ordinance § 76-73 arbitrarily and capriciously, and without any reasonable, rational or legitimate basis, prevents Plaintiffs individually, small taxicab companies and driver-owned companies from even being considered for a taxicab permit: Plaintiffs must be able to (a) apply for ten (10) permits; (b) have at least seven (7) vehicles in operational capacity; and (c) notwithstanding the ability to perform the requirements listed in (a)-(b), Plaintiffs will still not even be considered for a taxicab permit, unlike the current nine (9) taxicab companies, unless the number of outstanding permits has fallen to 490 (which has yet to, and will likely never, happen); and

(b) Kansas City, Mo. Ordinance § 76-73 arbitrarily and capriciously, and without any reasonable, rational or legitimate basis, favors the nine (9) large taxicab companies presently in possession of all outstanding permits in that (a) the nine (9) taxicab companies' annual renewal applications are considered and approved prior to any applications by potential new applicants such as Plaintiffs; (b) the nine (9) taxicab companies are not subject to the express requirement that the number of outstanding permits be reduced to 500; and (c) upon information and belief, the City has yet to even consider a new-applicant's permit application, subsequent to the above-mentioned amendment to Kansas City, Mo. Ordinance § 76-73.

62. Kansas City, Mo. Ordinance § 76-73 on its face and in its application advances no legitimate governmental interest. Any governmental interest offered by the City

15

would be mere pretext for unjustified, unreasonable, and illegitimate economic favoritism of large taxicab conglomerates and restricting the market share in the taxicab market.

63. Any interest offered by the City unrelated to economic favoritism would not be genuinely connected to the City's alleged legitimate governmental interest, as there is no rational and reasonable basis to have enacted Kansas City, Mo. Ordinance § 76-73 except for the above-mentioned arbitrary, capricious and anti-competitive justifications.

64. Indeed, Kansas City, Mo. Ordinance § 76-73 lacks any public justification whatsoever in that it, among other things, serves to reduce competition within the taxicab industry, which in turn increases taxicab fares and reduces the quality of service offered to the general public, and favors conglomerate taxicab companies.

65. Consequently, Kansas City, Mo. Ordinance § 76-73 violates the substantive due process clause of the 14th Amendment to the United States Constitution and should be declared unconstitutional and void.

66. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the authority to determine the rights, status and obligations of the parties herein.

67. An actual, cognizable controversy exists between Plaintiffs and the City in that Plaintiffs have suffered an actual, threatened and impending injury arising out of and as a result of Kansas City, Mo. Ordinance § 76-73, both on its face and in the City's arbitrary, capricious and anti-competitive enforcement and application of the same.

68. Such controversy is substantial and between parties having adverse legal interests of sufficient immediacy and/or reality which necessitates resolution herein.

69. Plaintiffs' interest herein will be indefinitely affected and damaged, absent a declaration that Kansas City, Mo. Ordinance § 76-73 is unconstitutional.

70. Granting the relief requested herein would immediately redress Plaintiffs' injury and terminate the controversy between Plaintiffs and the City.

71. Plaintiffs have no adequate remedy at law and to grant the remedy requested herein will avoid a multiplicity of lawsuits.

## COUNT 3 – PERMANENT INJUNCTION

72. Plaintiffs hereby reallege and incorporate paragraphs 1-71, as if fully set forth herein.

73. Unless the City is enjoined from enforcing Kansas City, Mo. Ordinance § 76-73, Plaintiffs will continue to face immediate and irreparable harm.

74. Such immediate and irreparable harm faced by Plaintiffs outweighs any potential harm to any other individual or entity, including the City, that would be suffered by the same in granting the instant relief.

75. Based upon the allegations contained herein, Plaintiffs' instant action will succeed on the merits.

76. Plaintiffs possess no adequate remedy at law.

77. An injunction herein serves the public interest in that it, among other things, will promote a more competitive taxicab industry, reduce taxicab fares, insure a greater quality of service, permit Plaintiffs, small taxicab companies and driver-owned taxicab companies (all otherwise restricted) the opportunity to obtain a portion of the taxicab market's market share and ensure a quality of living for Plaintiffs and all taxicab drivers not otherwise provided for under Kansas City, Mo. Ordinance § 76-73, which discriminates and favors the present taxicab company monopoly.

78. Plaintiffs hereby ask the Court to set its application for injunctive relief for full trial on the issues in this application and, after trial, to issue a permanent injunction enjoining the City from enforcing Kansas City, Mo. Ordinance § 76-73.

## **PRAYER**

WHEREFORE, Plaintiffs request that this Court:

(a) Enter a declaratory judgment, declaring that Kansas City, Mo. Ordinance § 76-73 is unconstitutional in that it is arbitrary, capricious, truly irrational, unreasonable, and discriminatory and in violation of the Equal Protection and Due Process Clauses of the United States Constitution, as amended; and

(b) Enter an Order permanently enjoining the City of Kansas City from enforcing Kansas City, Mo. Ordinance § 76-73; and

(c) Tax the costs of this action as well as reasonable attorneys' fees to the City; and

(d) Order such other and further relief as the Court may deem just and proper, legal or equitable, in the circumstances.

Respectfully submitted,

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**


By: /S/ Mark E. Goodman
    Mark E. Goodman, MO #22707
    Sheila Greenbaum, MO #25422
    Drey A. Cooley, MO #58784
    7701 Forsyth Blvd., 12th Floor
    St. Louis, Missouri 63105
    Telephone: (314) 505-5430
    Facsimile: (314) 505-5431
    goodman@capessokol.com
    greenbaum@capessokol.com
    cooley@capessokol.com

    Mary Jo Shaney, MO #35919
    White Goss Bowers March Schulte & Weisenfels, P.C.
    4510 Belleview, Suite 300
    Kansas City, MO 64111
    Telephone: (816)-502-4731
    Facsimile: (816)-753-9201
    mshaney@whitegoss.com
    *Attorneys for Plaintiffs*